Daniel Doria
989 S Main St Ste A PMB 407
Cottonwood, AZ 86324
702-279-5326
danieldoria105@yahoo.com

### IN THE U.S. DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

### 401 W Washington St., Phoenix, AZ 85003

**Case No.: CV-25-08043-PCT-MTL**

## SECOND AMENDED COMPLAINT FOR DECLARATORY AND OTHER RELIEF AND REQUEST FOR APPOINTMENT OF COUNSEL OR BENCH TRIAL

**DANIEL DORIA,**
**Plaintiff,**

**vs.**

**YAVAPAI COLLEGE DISTRICT GOVERNING BOARD;**
**SETH WEIDLING STURDEVANT, in his individual and official capacity;**
**ROBERT D. HAWS, in his individual and official capacity;**
**JOHN A. BUTZER, in his individual and official capacity,**
**Defendants.**

**2ND AMENDED COMPLAINT**

## I. INTRODUCTION

1. Plaintiff, Daniel T. Doria ("Plaintiff"), brings this action against Yavapai College District Governing Board and its property manager, Seth Weidling Sturdevant (collectively, "Defendants") for violations of the **Fair Housing Act (42 U.S.C. § 3604)**, the **Americans with Disabilities Act (ADA, 42 U.S.C. § 12132)**, **Retaliation under A.R.S. § 33-1381**, and **violations of due process under the Fourteenth Amendment**.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction under **28 U.S.C. § 1331** (federal question) and **28 U.S.C. § 1343** (civil rights violations). Venue is proper in this district under **28 U.S.C. § 1391(b)(2)** because the events giving rise to this complaint occurred in Arizona.

## III. PARTIES

3. Plaintiff is a resident of Yavapai College RV Park in Clarkdale, Arizona. Plaintiff has severe psychological disabilities, including **anxiety, depression, and minor paranoid delusions**, requiring stable housing for effective management. Plaintiff has resided at the property since August

**2ND AMENDED COMPLAINT**

2023. 4. Defendant **Yavapai College District Governing Board** is an educational institution responsible for managing the RV park where Plaintiff resides. 5. Defendant **Seth Weidling Sturdevant** is the property manager acting on behalf of Yavapai College.

## IV. FACTUAL BACKGROUND

6. Plaintiff began residing at the Yavapai College RV Park in August 2023. (**See Exhibit A & B, YC Lease and Pet Addendum**)

7. By February 2024, after 180 days of occupancy, Plaintiff's tenancy became **protected under the Arizona Recreational Vehicle Long-Term Rental Space Act (A.R.S. § 33-2101 et seq.),** which prohibits termination without cause. The act states:

-"**If a tenant resides in a park for more than one hundred eighty consecutive days, the tenancy shall be presumed to be permanent and the landlord may terminate the tenancy only for reasons prescribed in § 33-1476.**" *(A.R.S. § 33-2145(B))*.**:"**

8. Plaintiff had previously requested **class-related accommodations** due to his severe anxiety and depression but did not seek housing accommodations until Yavapai College **reversed its position on pet-sitting**

**2ND AMENDED COMPLAINT**

in December 2024. **(See Exhibit C, Previous YC Accommodation)**

9. On **September 6, 2024**, Defendants **terminated all tenant leases without cause**, violating the RV Act. **(See Exhibit D, Unlawful Lease Termination)**

10. Plaintiff **immediately informed Defendant, Sturdevant, via phone call/voicemail** of his business agreements with the college. **(See Exhibit E, Sworn Declaration of Daniel T. Doria)**

11. On **October 2, 2024**, Defendants placed an **illegal licensing agreement on Plaintiff's vehicle** to circumvent the RV Act's protections, marking the second RV Act violation. Plaintiff **rejected this agreement in writing**, but Defendants again ignored the response.

12. On **December 2, 2024,** Defendant attempted to enforce new licensing, not agreed to by Plaintiff, in an email sent by Mr. Sturdevant. **(See Exhibit F, 3rd RV Act Violation)**

13. On **December 12, 2024**, Plaintiff **asserted his rights live on the phone with Defendant Sturdevant, emphasizing his legal protections under the RV Act and Fair Housing Act**. Hours after this phone conversation, Defendants **mailed an eviction threat**, falsely alleging that Plaintiff's pet-sitting activities violated lease terms. **(See Exhibit E, Sworn Declaration**

**2ND AMENDED COMPLAINT**

of Daniel T. Doria)

14. On **December 12, 2024,** Defendant issued a notice from its attorneys demanding Plaintiff stop caring for any dogs that he does not own and rescinding the previous landlord's acknowledgment that Plaintiff pet-sits for cash and it is not a violation of the lease terms. **(See Exhibit G, Letter Claiming Lease Violation)**

15. On **February 11, 2025,** a request for accommodation to offset YC's reversed position on petsitting was submitted to Robert Haws. **(See Exhibit H, Plaintiff's formal accommodation request)** Defendant made no meaningful attempt to reach a reasonable accommodation, in violation of the Fair Housing Act.

## V. CLAIMS FOR RELIEF

### Count I: Violation of the Fair Housing Act (42 U.S.C. § 3604(f))

16. Plaintiff **has a qualifying disability** under the Fair Housing Act.

17. Defendants **knew or should have known** of Plaintiff's disability because Plaintiff **expressly informed them via written requests** and verbal conversations.

**2ND AMENDED COMPLAINT**

18. Plaintiff requested reasonable accommodations **only after** Yavapai College **reversed its policy on pet-sitting**, which directly impacted his ability to maintain stable housing.

19. Defendants **refused to grant these accommodations and retaliated against Plaintiff instead** by issuing an illegal lease termination and eviction threats.

20. As a result, Plaintiff suffered **emotional distress, financial harm, and loss of stable housing**.

**Count II: Violation of the Americans with Disabilities Act (42 U.S.C. § 12132)**

21. Defendants' actions **constitute discrimination** under Title II of the ADA, as they **failed to accommodate Plaintiff's disability despite repeated requests**.

22. Defendants **denied Plaintiff full and equal enjoyment of housing rights** by enforcing arbitrary rules against him while permitting similar activities from other tenants.

23. Plaintiff suffered **severe anxiety, stress, and deterioration of his mental health** as a direct result of Defendants' discriminatory conduct.

**2ND AMENDED COMPLAINT**

**Count III: Retaliation under Arizona Law**

24. Defendants **took adverse actions against Plaintiff** shortly after he asserted his legal rights, indicating a pattern of retaliatory conduct in violation of the Arizona Recreational Vehicle Long-Term Rental Space Act (A.R.S. § 33-2101 et seq.) and other applicable laws.

25. The retaliatory actions included:

- Issuing a **false notice of lease violations**.

- Moving forward with **eviction proceedings despite clear legal protections**.

- Attempting to force Plaintiff into an **illegal licensing agreement** to strip him of RV Act protections.

26.   These actions **constitute unlawful retaliation under Arizona law, including violations of the Arizona Recreational Vehicle Long-Term Rental Space Act (A.R.S. § 33-2101 et seq.) and other applicable protections**, causing Plaintiff emotional and financial harm.

**Count IV: Violation of Due Process (Fourteenth Amendment)**

27. Defendants' actions **violated Plaintiff's procedural due process rights** by depriving him of legal protections without a fair hearing.

**2ND AMENDED COMPLAINT**

28. Plaintiff was subjected to **arbitrary enforcement of housing policies** without clear standards or the ability to challenge them effectively.

29. As a direct result, Plaintiff suffered **irreparable harm, including loss of housing stability**.

**Request for Appointment of Counsel or Bench Trial**

30. Plaintiff respectfully requests that the Court **appoint counsel** under **28 U.S.C. § 1915(e)(1)** or, in the alternative, conduct a **bench trial** in this matter. The **appointment of counsel** is warranted because this case presents **complex legal and factual issues**, including claims under the **Fair Housing Act (42 U.S.C. § 3604(f))**, the **Americans with Disabilities Act (42 U.S.C. § 12132)**, and the **Arizona Recreational Vehicle Long-Term Rental Space Act (A.R.S. § 33-2101 et seq.)**. These laws involve intricate statutory interpretations and burdens of proof that a pro se litigant is unlikely to effectively navigate.

Additionally, Plaintiff's **poor trial skills** have already resulted in **admissions of wrongdoing on the record by Defendants**, but Plaintiff lacks the litigation experience necessary to effectively present these admissions in a structured manner that a **jury could process and translate into a verdict**.

**2ND AMENDED COMPLAINT**

Given the **legal and procedural complexity of this case**, a **bench trial is preferable** because:

1. The **legal issues require statutory interpretation**, which a **judge is better suited to analyze** than a jury.

2. The **factual record includes multiple admissions of wrongdoing**, which a jury may **fail to recognize as legally significant** without structured legal guidance.

3. Plaintiff's **disabilities**, including **severe anxiety and social processing difficulties**, may hinder his ability to effectively argue the case before a jury, whereas a **bench trial would allow for a more controlled presentation of evidence**.

4. The case involves **retaliation and discrimination under multiple federal and state statutes**, necessitating a nuanced understanding of **legal precedent and regulatory frameworks**.

For these reasons, Plaintiff **respectfully requests either the appointment of counsel or the granting of a bench trial** to ensure a fair adjudication of the claims presented.

**2ND AMENDED COMPLAINT**

## VI. PRAYER FOR RELIEF

**Prayer for Relief with Request for Appointed Counsel or Bench Trial**

**WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:**

1.  Appointment of Counsel or Bench Trial:

    ○ Pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel due to the complexity of this case, which involves statutory interpretation under the Fair Housing Act, Americans with Disabilities Act, and Arizona Recreational Vehicle Long-Term Rental Space Act.

    ○ In the alternative, Plaintiff requests a bench trial, as the case involves legal complexity beyond the capacity of a jury to assess, and Plaintiff's trial limitations have already resulted in admissions of wrongdoing on the record that a jury may struggle to translate into a verdict.

**2ND AMENDED COMPLAINT**

2.  Declaratory Relief:

   ○ Declare that Defendants' actions violated the Arizona
      Recreational Vehicle Long-Term Rental Space Act, the Fair
      Housing Act, and the Americans with Disabilities Act.

   ○ Affirm Plaintiff's legal protections against termination without
      cause and prohibit Defendants from further violations.

3.  Compensatory Damages:

   ○ Award compensatory damages for:

      ■ Emotional distress caused by Defendants' retaliatory
         conduct.

      ■ Financial harm, including legal expenses, printing, mailing,
         and travel costs incurred due to unlawful actions.

4.  Punitive Damages:

   ○ Award punitive damages to deter Defendants and similarly
      situated parties from engaging in retaliatory, discriminatory, or
      unlawful conduct.

**2ND AMENDED COMPLAINT**

5.  Sanctions:

    ○ Impose sanctions on Defendants for their continued violations of law, including a $300 award to cover immediate costs related to travel, mailing, and printing expenses.

6.  Attorney's Fees and Court Costs:

    ○ Award reasonable attorney's fees and court costs pursuant to applicable law.

7.  Other Relief:

    Grant such other and further relief as the Court deems just and proper.

DATED this 17th day of March, 2025.

Respectfully submitted,

/s/ Daniel Doria
Daniel Doria
989 S Main St Ste A PMB 407
Clarkdale, AZ 86324
702-279-5326
danieldoria105@yahoo.com

**CERTIFICATE OF SERVICE**

**2ND AMENDED COMPLAINT**

I certify that on March 17, 2025, this document was served via **email to:
Robert D. Haws & John A. Butzer
GUST ROSENFELD P.L.C.
One East Washington Street, Suite 1600
Phoenix, AZ 85004
rhaws@gustlaw.com | jbutzer@gustlaw.com
/s/ Daniel Doria

**2ND AMENDED COMPLAINT**

# EXHIBIT A

**2ND AMENDED COMPLAINT**

# MONTH-TO-MONTH LEASE AGREEMENT

This Month-To-Month Lease Agreement (the "Agreement"), dated 8-24-23 ("Effective Date"), is made and entered into by and between Yavapai County Community College District, a political subdivision of the State of Arizona (the "LANDLORD"), whose address is 1100 E. Sheldon St, Prescott, Arizona 86301 [handwritten] (the "TENANT").

### PREAMBLE:

**WHEREAS**, the LANDLORD is the owner the property located at **601 Black Hills Drive, Lot #5** in the County of Yavapai, in the State of Arizona with the ZIP code of 86324 (hereinafter referred to as the "Premises"); and

**WHEREAS**, the LANDLORD has the authority, ability, and desire to rent the above-mentioned Premises on a month-to month basis to the Tenant under the terms and conditions set forth in this Agreement; and

**WHEREAS**, the TENANT wishes to rent the above-mentioned Premises from LANDLORD under the terms and conditions stated in this Agreement;

**NOW, THEREFORE**, in consideration of all the mutual promises and covenants set forth herein, LANDLORD and TENANT agree as follows:

### Article I – Term

The rental of the Premises shall be on a month-to-month basis, and may be terminated by either party, with or without cause, by providing at least 10 days prior written notice to the other party. The Termination shall be effective on the last day of the next rental period.

### Article II – Payments

**Rent:** "Rent" shall mean all monetary obligations owed by the TENANT to the LANDLORD under the terms of this Agreement, except for the security deposit, if any.

The monthly Rent for the Premises shall be **$500.00** and be due by the tenth day of each calendar month. Rental payment shall be made payable to Yavapai College and sent to the aforementioned LANDLORD address listed here: Business Office 1100 E. Sheldon Street, Prescott, AZ 86301, pay utilizing the online forum at _____ or any other location subsequently specified by the LANDLORD in writing to the TENANT, on or before its due date and without demand. LANDLORD reserves the right to increase rent in its sole discretion provided LANDLORD shall provide TENANT with sixty (60) days prior written notice of any increase.

**Security Deposit:** In addition, a Security Deposit in the amount of **$100.00** shall be paid in advance prior to TENANT taking possession of the Premises. Such security deposit shall be returned to the TENANT, without interest, and less any set off for cleaning for damages to the Premises upon the termination of this Agreement. The Security Deposit may not be used to pay Rent or other charges while TENANT occupies the Premises. No refund of the Security Deposit shall be made until the TENANT has vacated the Premises, and the Premise have been inspected by the LANDLORD. Thereafter, the return of the Security Deposit, less any damage as described in Article XIV, shall occur within 30 days after TENANT vacates the Premises.

Upon the signing of this Agreement, which includes any applicable Addendum, payment of the Security Deposit and first month's Rent, the LANDLORD shall make the Premises available to the TENANT.

### Article III – Other Fees

**Late Fees:** The TENANT acknowledges the late payment of Rent may cause the LANDLORD to incur additional costs and expenses, the exact amount of which is extremely difficult and impractical to determine. These costs may include but are not limited to: processing, enforcement, accounting expenses and late charges. Partial Rent payments are not accepted. In the event that any payment required to be paid by TENANT hereunder is not made within 5 days, TENANT shall pay the LANDLORD, in addition to such payment or other charges due hereunder, a "late fee" in the amount of $25.00. Late fees are to be deemed additional Rent and can be waived in the sole discretion of the LANDLORD.

1

**2ND AMENDED COMPLAINT**

**Returned Checks:** The TENANT acknowledges that the issuance of a returned check may cause the LANDLORD to incur additional costs and expenses. If any payment is returned by the financial institution, for any reason, the LANDLORD may require all future payments to be made in cash or by certified check upon written notice to the TENANT. In addition, TENANT shall pay a returned check fee of $25.00 upon demand by the LANDLORD. All fees, late fees, and service charges incurred by the TENANT shall be deemed to be additional Rent and shall be due from TENANT to LANDLORD immediately following the incurring of the respective expenses, the nonpayment of which shall be a breach of this Agreement for nonpayment of Rent.

**Utilities:** The LANDLORD shall be responsible for arranging and paying for all utility services required on the Premises, provided however that LANDLORD, in its sole discretion and as permitted by A.R.S. § 33-1314.01, may impose a submetering system or ratio utility billing system during the term of this Agreement. In the event LANDLORD exercises this option, LANDLORD shall provide TENANT with ninety (90) days prior written notice.

### Article IV – Damage, Insurance & Indemnification

If, by no fault of the TENANT, the Premises are totally or partially damaged or destroyed by fire, earthquake, flood, storm, civil commotion, or other unavoidable cause so as to render the Premises totally or partially uninhabitable, either the LANDLORD or the TENANT may terminate this Agreement by giving the other prompt written notice. Rent shall be prorated on a thirty (30) day period based upon the date the Premises became totally or partially uninhabitable, and the prorated amount shall become the then-current monthly Rent until the Premises are returned to their original condition. If the Agreement is not terminated, the LANDLORD shall promptly repair the damage, and the Rent shall be reduced based on the extent to which the damage interferes with the TENANT's reasonable use of the Premises. If damage occurs as a result of an act of the TENANT or the TENANT's guests, only the LANDLORD shall have the right of termination, and no reduction of Rent shall be made. In such a case, TENANT(s) shall be responsible for all costs made necessary to repair the Premises.

The TENANT is required to carry TENANT's own insurance, i.e., Renter's Insurance, to protect the TENANT's property from any such loss or damage. The TENANT's or TENANT's guests' personal property and vehicles are not insured by the LANDLORD against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Nevertheless, TENANT shall comply with any requirements imposed on the TENANT by the LANDLORD's insurer to avoid the following: an increase in LANDLORD's insurance premium (or TENANT shall pay for the increase in premium) or loss of insurance.

The LANDLORD is responsible for paying and maintaining Rental Property taxes & insurance.

**Indemnification:** The TENANT agrees to indemnify, defend and hold the LANDLORD harmless from any damage or injury of or to TENANT, TENANT's family, guests, invitees, agents or employees or to any person entering the Premises to the extent such damage or injury is caused by TENANT or any invitee, family, guest, agent or employee of TENANT.

### Article V – No Assignment or Sub-Letting

The TENANT shall not assign this Agreement or sublet or grant any license to use the Premises or any part thereof without the prior written consent of the LANDLORD. Unless such consent is obtained, any assignment transfer or subletting of the Premises of this Agreement or tenancy, by voluntary act of the TENANT, by operation of law or otherwise, shall, at the option of the LANDLORD, terminate this Agreement. Any proposed assignee, transferee or sub-TENANT shall submit to the LANDLORD an application and credit information for LANDLORD's approval and, if approved, sign a separate written agreement with the LANDLORD and the TENANT. The LANDLORD's consent on such assignment, sub-letting or license shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release the TENANT of TENANT's obligations under this Agreement. Any assignment, subletting or license without the prior written consent of the LANDLORD, or assignment subletting by operation of law, shall be absolutely null and void and shall, and at the LANDLORDS's option, terminate this Agreement.

2

**2ND AMENDED COMPLAINT**

### Article VI – Non-Delivery of Possession

If despite reasonable efforts the LANDLORD is unable to deliver full possession of the Premises on the date specified above, the LANDLORD shall not be held liable to TENANT for any loss or damage, and the TENANT shall not be liable to the LANDLORD for any Rent until possession of the Premises is delivered. Either party may terminate this Agreement by written notice if possession has not been delivered within 7 days after the beginning of this Agreement. Upon delivery of such written notice, all payments made by the TENANT pursuant to this Agreement shall be immediately returned, all obligations of the TENANT and LANDLORD shall terminate, and this Agreement shall become null and void and neither the TENANT nor the LANDLORD shall have any further recourse or remedy against the other.

### Article VII – Use of the Premises

TENANT(s): Daniel Doria.

The Premises shall be used solely for residential purposes for TENANT(s) unless otherwise identified above. The number of occupants shall not exceed limits established by law, regulation, or ordinance. Should TENANT desire or anticipate a change in occupancy of the Premises, the TENANT shall immediately notify LANDLORD. If there is more than one TENANT, each one shall be individually and completely responsible for the performance of all obligations of TENANT under this Agreement, jointly with every other TENANT, and individually, whether or not in possession.

No part of the Premises shall be used at any time during the term of this Agreement by any OCCUPANT or guest of any OCCUPANT for the purpose of carrying on any business, profession, or trade of any kind, or for the purpose other than as a private residence. Written consent from the LANDLORD must be obtained before any other persons besides the TENANT occupies the Premises. The TENANT shall comply with all laws, ordinances, rules and regulations of any and all governmental authorities affecting the cleanliness, use, occupancy and preservation of the Premises. The TENANT agrees not to have the same overnight guests for more than 5 consecutive days.

The TENANT may bring a maximum of two (2) animals onto the Premises with the written consent of the LANDLORD and upon execution of the Lease Addendum for Animals. By signing this Agreement, TENANT hereby agrees to any additional deposits relating to TENANT's animal(s). No animal that is undomesticated or that is considered illegal according to federal, state, and local law is allowed on Premises. The TENANT is responsible for any possible damage caused by an authorized or unauthorized pet, including but not limited to: damage to any Recreational Vehicle (RV) not belonging to TENANT, damages any property owned by LANDLORD caused by urination/defecation, pests brought into the property on or by the animal, damage to the RV, yard or third parties caused by actions of the pet (scratching, clawing, biting, etc.), or any claims brought by a third party due to the animal.

### Article VIII - Parking

A designated parking space is available to the TENANT at the TENANT's sole risk; LANDLORD shall not be responsible for any damage, loss or theft of any vehicle or items on, part of or stored within the vehicle. Vehicle parking is used only for properly licensed and operable motor vehicles. NO trailers, boats, recreational vehicles, buses, or unregistered vehicles are to be brought on the Premises. NO parking or driving on the property lawn or neighbors' lawns or driveway is permitted. Any cars found parked on the lawn will be towed at TENANT's expense. Parking space is to be kept clean and cars must be parked in an orderly fashion. Mechanical work or storage of inoperable vehicles is not permitted in parking spaces or elsewhere on the Premises. The LANDLORD, at the TENANT's expense, may remove disabled vehicles and unregistered vehicles at any time. NO vehicle maintenance may be performed on the property.

### Article IX – Storage

TENANT shall only store personal property that TENANT owns and shall not store property claimed by another or in which another has any right, title, or interest. TENANT shall not store any improperly packaged food or perishable goods, flammable materials, explosives, hazardous waste or other inherently dangerous material or illegal substances.

### Article X – Maintenance, Rules & Cleanliness

3

**2ND AMENDED COMPLAINT**

XI. The TENANT shall, at all times, maintain the Premises in a clean and sanitary condition and return the Premises to the LANDLORD in the same condition as it was at the beginning of the tenancy, reasonable use and wear excepted. The TENANT shall immediately notify the LANDLORD or his/her designated maintenance custodian at **928-776-2180** of any maintenance or repair issues which require attention. Without limiting the generality of the foregoing, the TENANT shall:

I.     Not obstruct any ingress or egress to or from the Premises;
II.    Keep all windows, glass, window coverings, doors, locks and hardware in good, clean order;
III.   Not obstruct windows and doors;
IV.    Not leave windows or doors in an open position during inclement weather;
V.     Not cause or permit any locks or hooks to be placed upon any door or window on LANDLORD's property without the prior written authorization of the LANDLORD;
VI.    Keep all lavatories, sinks, toilets, and all other water and plumbing apparatus in good order and use same only for the purposes for which they were designed;
VII.   No object(s) shall be thrown from any porch, balcony or window, nor shall any object or item(s) be kept or store on, in or near any railing, fire escape or windowsill. The Tenant shall not place or store any item(s) or property in any common area.
VIII.  Not allow any trash, sand, rags, ashes or other such substances to be thrown or deposited in the lavatories, sinks or toilets (any damage to such apparatus and the cost of clearing stopped plumbing resulting from misuse shall be against the TENANT);
IX.    Not make or permit any guests to make any loud or improper noises, or otherwise disturb the other residents;
X.     Keep all radios, televisions, stereos, etc. to a level of sound that does not interfere with other residents;
XI.    Deposit all disposable items in the locations provided therefor and not allow any trash, garbage, rubbish, or other items to be deposited or left to stand on the exterior of the Premises or within the common elements;
XII.   Abide by and be bound by any and all rules and regulations affecting the Premises or the common area;
XIII.  Properly use, operate and safeguard all landscaping, appliances, and all mechanical, electrical, gas, and plumbing fixtures, and keep them and the Premises clean, sanitary and well ventilated; and
XIV.   Be responsible for checking and maintaining all smoke detectors.

XII. The TENANT shall immediately notify the LANDLORD, in writing, of any problem, malfunction or damage to the Premises. The TENANT shall be charged for all repairs caused by the TENANT's negligence or misuse, including that of TENANT's animal, guest or licensee, excluding that of ordinary wear and tear.

XIII. The TENANT agrees to comply with the LANDLORD's rules and regulations, which LANDLORD may amend periodically and in its sole discretion.  LANDLORD shall provide reasonable written notice to TENANT of any amendment, change, or medication to the rules and regulations. The TENANT shall not and shall ensure guests of TENANT do not disturb, endanger, or interfere with neighbors. The TENANT shall not use the Premises for any unlawful purposes, including but not limited to, using, manufacturing, selling, storing and/or transporting illegal substances or other contraband. The TENANT shall not violate any law or ordinance or commit a ware or nuisance on or about the Premises.

### Article XI – Condition of Premises

The TENANT hereby stipulates, represents, and warrants that the TENANT has examined the Premises, and that they are at the time of this lease in good order, repair, and in a safe, clean and habitable condition. The TENANT has examined and determined that all included appliances and fixtures, if any, including smoke detector(s), are clean and in operable condition, within one month of move-in date.

The TENANT shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on the Premises without the prior written consent of the LANDLORD. Any and all alterations, changes, and/or improvements built, constructed or placed on the Premises by the TENANT shall, unless otherwise provided by written agreement between the LANDLORD and the TENANT, be and become the property of the LANDLORD and remain on the Premises at the expiration or early termination of this Agreement. Should the TENANT fail to obtain the LANDLORD's written consent for such alterations or improvements, then the LANDLORD may charge the TENANT for restoration of the Premises to the condition it was in prior to any alterations or improvements. The TENANT shall not be allowed to make any repairs, alterations, or improvements in or about the Premises including but not limited to: painting or wallpapering LANDLORD's property, adding or changing locks on LANDLORD's property, installing antenna or satellite dish(es) on LANDLORD's property, placing signs, displays or exhibits, or using screws, fastening devices, large nails or

4

**2ND AMENDED COMPLAINT**

adhesive materials. The LANDLORD shall not be responsible for costs of alterations or repairs made by the TENANT, and the TENANT shall not be allowed to deduct from the Rent the costs of any such repairs, alterations or improvements done without the LANDLORD's consent. Any unilateral deduction made by the TENANT shall be considered unpaid Rent.

### Article XII – Entry & Inspection

The LANDLORD or their agent(s) or designee(s) shall be permitted to enter the Premises at reasonable times and with reasonable notice to the TENANT for the purpose of inspecting the Premises, maintaining or repairing the Premises, ensuring compliance with any statute, code or regulation; or for the purpose of showing the Premises to any real estate agent, appraiser, mortgagee, prospective buyer, prospective tenant or inspector/contractor for prospective buyer/tenant. The LANDLORD and the TENANT herby agree that 24-hour notice shall be reasonable and sufficient notice to exercise the right to enter, except to conduct an inspection of the Premises prior to the TENANT moving out, which shall require 48-hour written notice. NO notice is required: to enter in case of an emergency, if the TENANT is present and consents at the time of entry or if the TENANT has abandoned or surrendered the Premises. No written notice is required if the LANDLORD and TENANT orally agrees to an entry for agreed services or repairs if the date and time of entry are within one week of the oral agreement. The LANDLORD's right of entry does not extend to any RV not owned by LANDLORD.

Subject to local law, the TENANT hereby agrees to, upon demand of the LANDLORD, to temporarily vacate the Premises for a reasonable period to allow for fumigation to control wood destroying pests or organisms or perform other necessary repairs to the Premises. The TENANT agrees to comply with all instructions and requirements necessary to prepare the Premises to accommodate pest control, fumigation, or other work, including bagging or storage of food and medicine, and removal of perishables and valuables.

### Article XIV – Surrender of Premises

The TENANT(s) has surrendered the Premises when (a) the move-out date has passed and no persons are living in the Premises within the LANDLORD's reasonable judgement, or (b) access to the Premises has been turned to LANDLORD, whichever comes first. Upon expiration of the Agreement, the TENANT(s) shall surrender the Premises to the LANDLORD in the same condition as when they moved in, with the exception of reasonable normal use and wear expected. The TENANT shall be responsible for all damages or losses caused to the Premises by or through any willful or negligent act or actions of the TENANT or the TENANT's guest(s), with the exception of any natural disasters or any injury or loss caused by the LANDLORD or for which the LANDLORD is statutorily liable.

Specifically, upon the termination of the Agreement, the TENANT shall:
  I.    Give the LANDLORD all copies of all keys or opening devices to the Premises, if applicable;
  II.   Vacate and surrender the Premises to the LANDLORD, empty of all persons and personal property;
  III.  Vacate any and all parking and storage spaces;
  IV.   Clean and deliver the Premises to the LANDLORD in the same condition as they were received;
  V.    Give written notice to LANDLORD of the TENANT's forwarding address.

Right to Pre-Move-Out Inspection and Repairs: After giving or receiving notice of termination, TENANT has the right to request an inspection of the Premises to take place. If TENANT requests such an inspection, TENANT shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. Any repairs or alterations made to the Premises as a result of this inspection (collectively the "Repairs") shall be made at TENANT's expense. The Repairs may be performed by the TENANT or through others, who have adequate insurance and licenses and are approved by LANDLORD. The work shall comply with applicable law, including governmental permit inspection and approval requirements. The Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all repairs may not be possible.

In the event TENANT fails to vacate the premises after termination by the LANDLORD, LANDLORD may proceed with any available legal remedies to remove TENANT from the Premises, including instituting court-action under State or local laws for eviction proceedings.

### Article XVI – Quiet Enjoyment

5

**2ND AMENDED COMPLAINT**

The TENANT, upon payment of all of the sums referred to herein as being payable by TENANT and TENANT's performance of all TENANT's obligations contained herein and TENANT's observance of all rules and regulations, shall be able to peacefully and quietly have, hold and enjoy the Premises for the term hereof.

### Article XVIII – Fire & Casualty

In the event the Premises or any common area providing a necessary egress/access to the Premises are damaged by fire or other casualty which materially interferes with the Tenant's use of or access to the Premises, the Landlord may terminate this Agreement upon written notice to the Tenant. If the Landlord has not exercised the option to terminate, the rent shall be reduced to the fair rental value of the Premises until said Premises are restored to its former condition. If the Landlord has not restored the Premises or egress/access within days, the Tenant may give notice of terminate this Agreement, which shall become effective at the end of the then current month.

### Article XIX - Notices

All notices required or permitted to be made under this Agreement, including any notice of violation of any terms and conditions herein, of law or the need for care, maintenance or repair, shall be done so in writing and may be delivered by hand, sent by certified mail, return receipt requested, or sent by the United States Postal Service overnight Express Mail or other overnight delivery service, addressed to the LANDLORD or TENANT or their authorized representative as set forth within this section or to the TENANT at the Premises during the term of the Agreement. Said notice shall be deemed to have been given upon delivery, or if sent by certified mail on the date of delivery set forth in the receipt, or in the absence of a receipt to be three (3) business days after deposit or if sent by Express Mail or overnight mail or delivery, the next business day after deposited with the overnight or delivery service, whether or not a signature is required or received. Acceptance of any notice, whether by delivery or mail, shall be sufficient if accepted or signed by a person having express or implied authority to receive the same. Notice shall also be deemed adequate if given in any other form permitted by law.

Notices may be served at the following addresses, or at any other location subsequently designated by either the LANDLORD or TENANT:

| LANDLORD | TENANT |
|---|---|
| Yavapai College | Daniel Doria |
| 1100 E Sheldon St | 601 Black Hills Dr. Lot # 5 |
| Prescott, Arizona 86301 | Clarkdale, Arizona 86324 |
| 928-776-2180 | 702-279-5326 |

### Article XX – Miscellaneous Provisions

**Copy of Agreement:** The LANDLORD shall deliver a copy of this Agreement, duly executed by LANDLORD or their authorizing agent, to TENANT within 10 calendar days after a copy has been duly executed by the TENANT and has been delivered to the LANDLORD.

**Governing Law:** This Agreement shall be governed, constructed, and interpreted by, through and under the laws of the State of Arizona. Notice is provided that LANDLORD may cancel this Agreement pursuant to A.R.S. § 38-511.

**Severability:** If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**Waiver:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach. No indulgence, waiver, election or non-election by the LANDLORD under this Agreement shall affect TENANT's duties and liabilities hereunder.

6

**2ND AMENDED COMPLAINT**

**Binding Effect:** The covenants, obligations and conditions contained in this Agreement shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

**Headings:** The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations of the LANDLORD or the TENANT.

**Modifications:** The parties hereby agree that this Agreement shall not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto.

**Entire Agreement:** This Agreement, together with any Addenda, contains the entire agreement between the parties and all understandings between them are incorporated herein. Its terms are intended by the parties as a final, complete and exclusive expression of their agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.

*IN WITNESS WHEREOF*, the parties hereto have set their respective hands and seals to this Agreement on the date first written above.

_____          8·24-23
(LANDLORD SIGNATURE)                        (DATE)

_____          8-24-23
(TENANT SIGNATURE)                          (DATE)

7

**2ND AMENDED COMPLAINT**

# EXHIBIT B

**2ND AMENDED COMPLAINT**

## LEASE ADDENDUM
## FOR ANIMALS

This LEASE ADDENDUM FOR ANIMALS ("Animal Addendum") is a part of the Agreement dated 3-24-23 by and between Yavapai College ("LANDLORD") and Daniel Doria ("TENANT") for the property located at 601 Black Hills Dr. Lot #5, Clarkdale, AZ 86324 ("Premises").

☒ TENANT does not have an Animal now, but agrees that prior to bringing any Animal(s) onto the Premises, TENANT will obtain LANDLORD's written approval and agree to the Animal Rules and Regulations listed below. TENANT also agrees to pay additional monthly rent, fee and Animal deposits as may be required by LANDLORD in LANDLORD's sole discretion.

☒ TENANT has the Animal(s) identified below and agrees to comply with the Rules and Regulation in this Animal Addendum.

Sam – Golden Cocker
Pet Name and Breed

_____
License Number (if applicable)

Tina – Chihuahua
Pet Name and Breed

_____
License Number (if applicable)

Emergency Contact (name and phone of person authorized to retrieve Animal(s) on Premises in the event TENANT is incapacitated or deceased): Vernon Doria (909)496-7444

Rules and Regulations:

- Each Premise is limited to two (2) Animals. Additional or different Animals, including without limitation any offspring of the authorized Animal(s), are unauthorized without written consent from LANDLORD and constitutes a material breach of the Rental Agreement.
- TENANT represents and warrants that the above listed Animal(s) do not have a history of aggressive, threatening or violent behavior and are quiet and housebroken. If a pet, assistance or service animal attacks, bites, or behaves aggressively towards another person or animal on LANDLORD's property, it will be required to leave and/or the tenancy may be terminated. TENANT agrees that the LANDLORD may inspect the Premises from time to time as

**2ND AMENDED COMPLAINT**

is reasonably necessary to determine the number of Animal(s), identification of the Animal(s), how they are maintained and to check for possible damage caused by the Animal(s).

- The Animal will always be kept inside, except when on a leash no longer than 6 feet and under control and presence of a responsible person. TENANT agrees to walk Animal(s) only in specified areas. No Animal(s) are allowed in _____N/A_____. Animal(s) may not be left unattended or tied to any patio, yard, porch areas, vehicle, RV, trees or fixtures.

- Animal(s) are to relieve themselves only in areas specifically designated by LANDLORD. TENANT is responsible for keeping the Premises in a sanitary, odor-free condition. TENANT must remove and properly dispose of all droppings immediately.

- TENANT shall comply with all applicable federal, state and local laws, rules, regulations and ordinances relating to such animal(s), such as without limitation any health and safety codes, licensing, vaccination, and leash and nuisance laws. TENANT shall provide LANDLORD with prompt written notice of any violations or alleged violations of law by the Authorized Animal or by the TENANT(s) relating to the Animal(s).

- Barking, growling, snarling, crying, howling, and other such noises that disturb other residents are cause for revoking permission to keep the Animal(s) and/or for a non-compliance notice terminating the Agreement if the violation is not timely cured. Violation of this Animal Addendum, and/or valid complaints received from other TENANT is cause for LANDLORD revoking permission to keep the Animal, and/or for termination of the Agreement.

- TENANT shall indemnify, defend and hold harmless LANDLORD and its employees and agents for, from and against any and all liability, or claims of liability, arising in connection with the Animal, including reasonable attorney's fees and costs.

LANDLORD's Signature _____ DATE: 8-24-23

TENANT's Signature _____ DATE: 8-24-23

**2ND AMENDED COMPLAINT**

# EXHIBIT C

**2ND AMENDED COMPLAINT**



March 23, 2022

Dear Daniel,

This letter is in reference to your request of being permitted to use the software, Mathway, on your proctored, in-person, final for MAT 212, Survey of Calculus course. This request was considered as potentially creating a fundamental alteration to the curriculum. In accordance with Yavapai College's Fundamental Alteration Protocol, a committee of faculty and staff met to review the request and determine whether it will or will not cause a fundamental alteration and to search for accommodations that might meet your disability-related needs that have not yet been implemented. After review of the course syllabus, the course objectives (learning outcomes), and Mathway software, the committee decided that allowing the use of the Mathway software, would Fundamentally Alter the course objectives. Specifically, learning outcomes #3 (Compute derivatives using the rules of differentiation and #6 (Compute definite and indefinite integrals using basic integration techniques). These Learning Outcomes can be found on your course syllabus for MAT 212. Additionally, Mathway software does not directly address your disability-related need to circumvent memory difficulties primarily, but due to its nature, Mathway software substitutes comprehension and application of problem solving (an essential element of the math class), by completing the entire problem-solving aspect, instead of only serving as a memory aid.

You stated that you requested this type of accommodation due to memory difficulties that you experience. As a reasonable accommodation for this need, we can provide the following accommodations for you:

- Instead of a 3 X 5 index card that all students can use during the exam, you will be allowed to bring in an 8.5 X 11 sheet of paper with notes, formulas, example problems, etc. to be used on the final.

- You will be allowed to use double the amount of time than other students to complete the exam. You will also be permitted the use of a graphing calculator or to use Desmos online app during the exam.

Your instructor, Dean Holbrook, will also be providing a study guide for all students in the class to complete prior to the exam so that you know what areas to focus on in your preparation for the exam.

If you do not agree with this decision, you may file a non-academic complaint here: https://www.yc.edu/v6/student-services/nonacademic.html. And, please do not hesitate to contact me for any clarification or questions.

Kind regards,

Robb

Robb Ferguson, MC
Director, Yavapai College Learning Center's and Disability Resources
Robb.ferguson@yc.edu, 928-776-2079



1100 East Sheldon Street,  Prescott, Arizona 86301  928.445.7300  toll-free 800.922.6787

**2ND AMENDED COMPLAINT**

# EXHIBIT D

**2ND AMENDED COMPLAINT**

3/17/25, 4:23 PM                                Mail - Doria, Daniel - Outlook

 Outlook

---

**Fw: Verde Valley RV Notice**

---

**From** Doria, Daniel <ddoria@scholar.yc.edu>
**Date** Mon 3/3/2025 3:20 AM
**To** dtdoria85@gmail.com <dtdoria85@gmail.com>

📎 3 attachments (212 KB)
Housing Handbook for RV Renters.pdf; YC Student License Agreement Spring Start.docx; ANIMAL ADDENDUM.docx;

---

**From:** Weidling Sturdevant, Seth <Seth.WeidlingSturdevant@yc.edu>
**Sent:** Friday, September 6, 2024 10:56 AM
**To:** Weidling Sturdevant, Seth <Seth.WeidlingSturdevant@yc.edu>
**Subject:** Verde Valley RV Notice

Hello VVC Tenants!

I am writing to introduce myself and to share some important information.

My name is Seth Weidling, and I joined YC in August as its first Property Manager, working with YC students and YC employees throughout Yavapai County to help meet their housing needs. I look forward to working with Lyndsie to ensure YC provides a safe living space with reasonable amenities at a fair price during your time with Yavapai College.

**First:**
 I am excited to share that we will be expanding the amenities that are included for people living at the Verde Valley Campus.  By the end of September, you will have:
- 1. 24/7 access to
  - 1. The restrooms and showers in Building I
  - 2. The game room and dining room areas in building F
- 2. Free wi-fi in the RV park
- 3. Access to a 40' x 20' dog run

Now that Monsoon is coming to a close, Facilities will be working to improve the landscaping around the RV Park.  This will include planting trees, installing a rock border around the park, cleaning up rock piles, and weed control around the park perimeter (please remember that weed control around each trailer is the tenant's responsibility).

As a related aside, many RV parks provide access to a weight room facility.  Please remember that full-time employees and full-time students (12 credits or more per term) have access to free classes.  I would encourage you to consider taking advantage of this benefit, which includes PE classes!

**Second:**
As YC continues to expand our RV & Apartment Housing options, we need to standardize our contracts and Housing Rules for all of our locations.   With that in mind, we have created 3 agreements: 1 for YC employees, 1 for YC students, and 1 for people not affiliated with YC.  I have enclosed a copy for your review.  I have also enclosed a copy of the Housing Rules for your convenience, as well as a Pet Addendum if you have animals, that you will need to sign- understanding that the fees are waived, due to

**2ND AMENDED COMPLAINT**

you living in your own RV. If you are in a YC provided RV, you must pay the animal fee of $350 plus a $100 animal deposit per animal.

PLEASE NOTE that moving forward, we will require students to commit for the entire school year (roughly mid-August through mid-May).  Exceptions will be allowed as noted in Section 10 of the new License Agreement, primarily for those graduating in December. Also, please note that beginning  in mid-December, housing charges will be moved to your student account and you will be required to either pay in advance, or sign up for a payment plan.

Our current lease agreement allows either party to give at least 10 days' notice to not renew.  **Please consider this email as your official notification that YC will not renew your existing month-to-month lease, effective 12/14/24; we will begin the new agreements effective 12/15/24.**  As part of this transition, we will be raising RV pad rates to $550/mo ($2,475/Per Semester)for students. The monthly rental rate for the YC-owned RVs will remain unchanged.

Lyndsie or I will meet with you during the month of September or October to fully explain the changes and to sign your new agreements.  I look forward to getting to know each of you a little better at that time.

**Seth Weidling Sturdevant**
Property Manager
Finance & Administrative Services (FAS)
seth.weidlingsturdevant@yc.edu
P: 928.776.2367



INTERNAL

**2ND AMENDED COMPLAINT**

# EXHIBIT E

**2ND AMENDED COMPLAINT**

## DECLARATION OF DANIEL T. DORIA

I, Daniel T. Doria, declare under penalty of perjury under the laws of the United States of America and the State of Arizona that the following is true and correct to the best of my knowledge and belief:

### 1. My Tenancy and Protections Under Arizona Law

1. I became a tenant at Yavapai College RV Park in August 2023, where I have continuously resided.
2. Under A.R.S. § 33-2145(B), my tenancy became protected after 180 consecutive days of occupancy, meaning that my rental agreement could not be terminated without cause.
3. Yavapai College, through Seth Weidling Sturdevant, attempted to bypass these legal protections by issuing lease termination notices without cause beginning on September 6, 2024.

### 2. Assertion of My Rights and Retaliation

4. On December 12, 2024, I had a live phone conversation with Defendant Sturdevant, during which I asserted my legal rights under the Arizona Recreational Vehicle Long-Term Rental Space Act (A.R.S. § 33-2101 et seq.) and the Fair Housing Act (42 U.S.C. § 3604(f)).
5. I informed Sturdevant that his attempt to impose an illegal licensing agreement and threaten eviction without cause violated Arizona law.
6. Just hours after this phone call, Yavapai College mailed me an eviction threat, falsely claiming that my pet-sitting activities violated lease terms. This marked a clear act of retaliation for asserting my legal rights.

### 3. My Need for Reasonable Accommodations

7. Prior to December 2024, I had only requested class-related accommodations at Yavapai College.
8. However, after Yavapai College reversed its policy on pet-sitting, I was left with no choice but to formally request reasonable accommodations related to my tenancy, as my pet-sitting activities were critical to maintaining stable housing and managing my severe psychological conditions.
9. I suffer from severe anxiety, depression, and minor paranoid delusions, which are documented disabilities requiring stability in housing.
10. Despite knowing about my disabilities, Defendants refused to grant accommodations and instead continued their retaliatory actions, including eviction threats.

**2ND AMENDED COMPLAINT**

4. Emotional and Financial Harm Suffered

11. As a direct result of Defendants' retaliatory conduct and refusal to provide accommodations, I have suffered severe emotional distress, including:
- Increased anxiety and depression due to ongoing eviction threats.
- Intrusive thoughts and emotional instability caused by housing insecurity.
12. Additionally, Defendants' actions have caused financial harm, including:
- Costs related to court filings, printing, mailing, and legal expenses.
- Loss of income from pet-sitting, which was previously permitted and suddenly revoked in retaliation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on: March 17, 2025
Location: Clarkdale, Arizona

Signed,

/s/ Daniel T. Doria
Daniel T. Doria
Plaintiff, Pro Se

**2ND AMENDED COMPLAINT**

# EXHIBIT F

**2ND AMENDED COMPLAINT**

 Outlook

---

**Re: December Rent Reminder**

---

**From** Doria, Daniel <ddoria@scholar.yc.edu>
**Date** Mon 12/2/2024 10:00 AM
**To** Weidling Sturdevant, Seth <Seth.WeidlingSturdevant@yc.edu>
**Cc** Sheldahl, Tania <Tania.Sheldahl@yc.edu>

Hi Seth,

I never received a response from you regarding my tenancy.

I'll operate based on our written terms until communication takes place.

Regards,

Daniel Doria

On Dec 2, 2024, at 8:34 AM, Weidling Sturdevant, Seth <Seth.WeidlingSturdevant@yc.edu> wrote:


Good Morning,

I hope this message finds you well.

This is a friendly reminder that the rent for December is due now. Please note that any payments made after December 5th , 2024 will be considered late. If you have already made your payment- Thank you!

Moving foreword, beginning in January rent will be either payroll deduction (if you are an employee) or placed on your student account per the License Agreement going into effect on December 15th. 2024.

If you are an employee, I need you to fill out the payroll deduction form attached to your notice email. If you have not received it sent over to you again, please let me know.

If you are a student, in January you will need to go through your student portal and choose a payment plan that works best for you.

Thank you for your prompt attention to this matter. If you have any questions, please do not hesitate to reach out!

Best regards,


*Seth Weidling Sturdevant*
Property Manager
Finance & Administrative Services (FAS)
seth.weidlingsturdevant@yc.edu
P: 928.776.2367

**2ND AMENDED COMPLAINT**

**2ND AMENDED COMPLAINT**

# EXHIBIT G

**2ND AMENDED COMPLAINT**



*GUST*
*ROSENFELD*
ATTORNEYS SINCE 1921 P.L.C.

■ ONE E. WASHINGTON, SUITE 1600 ■ PHOENIX, ARIZONA 85004-2553 ■ TELEPHONE 602-257-7422 ■ FACSIMILE 602-254-4878 ■

Laura Sever Blanco
602-257-7662
lsblanco@gustlaw.com

December 12, 2024

VIA CERTIFED MAIL, RETURN RECEIPT
REQUESTED and FEDEX

Mr. Daniel Doria
601 Black Hills Drive, Lot #5
Clarkdale, Arizona 86324

Re: Breach of Month-to-Month Lease
Our File No. 019221-00511

Dear Mr. Doria,

You ("Tenant") entered into that certain Month-to-Month Lease dated August 24, 2023 (the "Lease") with Yavapai County Community College District, a political subdivision of the State of Arizona ("Landlord"). It has come to our attention that you are operating a business of pet sitting out of your recreational vehicle.

The first paragraph of Article VII of your Lease provides as follows: "The Premises shall be used solely for residential purposes for TENANT(s) unless otherwise identified above." There is no other provision in your lease allowing you to operate a business. The second paragraph of Article VII of your Lease states "No part of the premises shall be used at any time during the term of this Agreement by any OCCUPANT or guest off any OCCUPANT for the purpose of carrying on any business, profession, or trade of any kind, or for the purpose other than as a private residence."

In Article XX of the Lease – Miscellaneous Provisions, the seventh paragraph, provides that the Lease may "not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto." You have entered into a Lease Addendum for Animals, but that Addendum only pertains to the two dogs owned by you. Your argument that a previous manager verbally approved your pet sitting business is not valid without an agreement signed by Landlord.

GUSTLAW.COM

**2ND AMENDED COMPLAINT**

Mr. Daniel Doria                              -2-                        December 12, 2024

Pursuant to Arizona Revised Statutes § 33.2143 (D)(1) of the Recreational Vehicle Long-Term Rental Space Act, "If there is a material noncompliance by the tenant with the rental agreement, the landlord shall deliver a written notice to the tenant specifying the acts and omissions constituting the breach and that the rental agreement will terminate on a date not less than thirty days after receipt of the notice if the breach is not remedied in fourteen days."

Operating a business out of your recreational vehicle is a material breach of your Lease. This letter constitutes Landlord's notice pursuant to Arizona Revised Statutes § 33.2143 (D)(1) that Tenant is required to remedy this breach within fourteen days. Landlord will require proof that you have taken down your website, have ceased all other advertisements for your business and in fact no longer pet sit animals that do not belong to you. Failure to do so will result in your Lease termination thirty days after your receipt of this letter.

Landlord looks forward to your cooperation with this letter.

Very truly yours,

*Laura Sever Blanco*

Laura Sever Blanco
For the Firm

6398472.1

cc:  (via e-mail)
     Seth Weidling Sturdevant
     Ivonne Zuniga
     Clint Ewell

**2ND AMENDED COMPLAINT**

# EXHIBIT H

**2ND AMENDED COMPLAINT**

3/17/25, 4:44 PM                    Gmail - Request for Reasonable Accommodation Under the Fair Housing Act – Pet-Sitting for Disability Rehabilitation

 Gmail                                                    Daniel Doria <dtdoria85@gmail.com>

## Request for Reasonable Accommodation Under the Fair Housing Act – Pet-Sitting for Disability Rehabilitation
2 messages

**Daniel Doria** <dtdoria85@gmail.com>                                        Tue, Feb 11, 2025 at 3:39 PM
To: Robert Haws <rhaws@gustlaw.com>, Pauletta Seitz <PSeitz@gustlaw.com>

Dear Yavapai College District Governing Board,

I am writing to formally request a reasonable accommodation under the Fair Housing Act (42 U.S.C. § 3604) and the Americans with Disabilities Act (ADA) regarding my tenancy at Yavapai College's RV park. Due to my diagnosed psychological disabilities, including severe anxiety, depression, and minor paranoid delusions, I require stable housing and access to rehabilitative activities that support my mental health, financial stability, and reintegration into the workforce.

Specifically, I request that I be permitted to engage in basic pet-sitting activities within my tenancy. This accommodation is necessary to:

1. **Support My Disability Rehabilitation** – Caring for animals has been recognized as a therapeutic activity that alleviates symptoms of anxiety and depression, providing structure and emotional stability critical to my mental health. The stability of this activity reduces the frequency and severity of my symptoms and enables me to remain functional.
2. **Facilitate My Back-to-Work Efforts** – I am actively working toward self-sufficiency to eliminate my reliance on public benefits and avoid the need for Social Security Disability Insurance (SSDI) or Supplemental Security Income (SSI). Pet-sitting provides an essential source of income and financial independence while I transition back into a stable professional role.
3. **Comply with Prior Assurances** – Prior to my tenancy, I was explicitly assured by the former property manager, Jamie Oltersdorf, that basic pet-sitting would not violate lease terms. The reversal of this position after my tenancy commenced and in response to my assertion of rights under the Arizona Recreational Vehicle Long-Term Rental Space Act (A.R.S. § 33-2101 et seq.) suggests retaliatory intent, which further necessitates accommodation to protect against discriminatory enforcement.

Judge Gordon has already recognized on the record that my tenancy is protected under the Arizona RV Act and that adverse actions taken against me appear retaliatory. My request does not impose any undue burden on Yavapai College, nor does it fundamentally alter the nature of the housing arrangement. I am requesting only to be permitted to continue the minimal pet-sitting activities I was initially assured were acceptable.

Under the Fair Housing Act, housing providers are required to engage in an interactive process when a reasonable accommodation request is made. As such, I request a written response within 10 business days, per HUD's recommended guidance. If Yavapai College intends to deny or modify this request, I ask that you provide a detailed explanation of the reasons and offer alternative accommodations that would meet my needs.

YC is in receipt of a previous accommodation request for school activities. Please consult with the accommodation department for info.

Please feel free to contact my disability attorney; we've worked together for years; I'm happy to authorize any necessary disclosures:

Attorney, Pekas Smith
602-213-1694

Case manager, Colombe Feutrier
602-445-5658

SSI Case Manager:
Briana C.
18007721213

Sincerely,

https://mail.google.com/mail/u/0/?ik=8300ec1f0b&view=pt&search=all&permthid=thread-f:1823802435054263734&simpl=msg-f:1823802435054263734&simpl=...       1/2

**2ND AMENDED COMPLAINT**

**Daniel Doria**
Plaintiff, Pro Se
989 S Main St Ste A PMB 407
Clarkdale, AZ 86324
702-279-5326
danieldoria105@yahoo.com

---

**Mailtrack Notification** <notification@mailtrack.io>                    Wed, Feb 12, 2025 at 7:16 AM
Reply-To: rhaws@gustlaw.com, pseitz@gustlaw.com
To: dtdoria85@gmail.com

🔥 Hot conversation: Pauletta Seitz opened it many times in a short period or forwarded it. View all 5 opens | turn off hot conversations

**2ND AMENDED COMPLAINT**